884 F.2d 578
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Judy M. BUTCHER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-6278.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1989.
 
 Before RALPH B. GUY, Jr., BOGGS, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, Judy Butcher, appeals from the denial of supplemental security income benefits. Claimant initially filed for benefits on December 2, 1986, alleging a disability onset date of 1976. Butcher was thirty-two years of age at the time of filing. In her original application, the only impairment alleged was a "back deformity." (App. 46). In a subsequent disability report filed on June 30, 1986, Butcher indicated she suffered from a "back problem [and] psychiatric problems." She also indicated that "I have a curvature of the spine. This causes pain on lifting. I can't use my arms or legs. I have been seeing a psychiatrist off and on for 3 years." (App. 61).
 
 
 2
 After this claim was initially denied, Butcher sought and received a hearing before an administrative law judge (ALJ). The ALJ determined that Butcher had no exertional impairments but did have severe non-exertional impairments: "borderline IQ, psychiatric impairments, [and] limitation to work in an atmosphere not containing excessive gases, dust, [or] fumes." (App. 17). The ALJ concluded that claimant could perform her past relevant work as well as a variety of other medium, light, and sedentary jobs which exist in significant numbers in the national economy. Id. The Appeals Council denied review and Butcher appealed to the district court where the district judge found the Secretary's denial of benefits to be supported by substantial evidence.
 
 
 3
 On appeal, claimant argues that the ALJ and the district court should have followed up on recent medical reports and that, in any event, she met the Listing for psychiatric impairment because of her dependent personality disorder. See 20 C.F.R. Part 404, Subpt. P, App. 1, Secs. 12.08A(5), B(1), (2), (4).
 
 
 4
 Upon a review of the record, we find that substantial evidence supports the Secretary's denial of benefits, and we affirm.
 
 I.
 
 5
 Claimant, on her own, generated little in the way of medical evidence. She had received medical services from the Mountain Comprehensive Care Center on May 4, 1984, April 15, 1985, and November 11, 1985. Butcher complained of depression, sleeping poorly, and appetite problems. She suffered from exogenous obesity. There was no evidence of psychosis or suicidal ideation. She was diagnosed as having marital problems, an abusive husband, and, subsequently, as having dependent personality traits. Claimant went to a few therapy sessions, but voluntarily terminated treatment.
 
 
 6
 The only other medical report resulted from two consultative examinations performed at the request of the government after Butcher filed for benefits. Shelle Dietrich, a clinical psychologist, examined Butcher on December 20, 1986. Claimant was found to be fully oriented but unmotivated and exhibiting a dependent personality style. Personality testing indicated that claimant functioned within acceptable limits in terms of personality structure though she may be hampered in daily functioning due to a tendency to view her life situation in a negative light. Diagnoses were adjustment disorder with hypochondriacal features, borderline intellectual functioning, and dependent personality disorder. Due to her borderline IQ, claimant would be precluded from performing work activities requiring higher than that level of mentation. No other functional limitation was objectively demonstrated.
 
 
 7
 On January 7, 1987, claimant was also examined by consulting internist, J.E. Myers, M.D. This examination revealed that claimant's range of motion of all joints was normal. Reflexes were equal, with some decrease in left ankle jerks. Lumbar x-rays were negative. The claimant was obese, measuring 65 inches in height and weighing 242 pounds. Diagnoses were chronic back strain, chronic anxiety reaction, and exogenous obesity.
 
 
 8
 The ALJ also considered the reports of a non-examining state agency psychologist and psychiatrist. They concluded that Butcher had an affective disorder which results in a slight restriction of daily living activities and slight difficulty in maintaining social functioning.
 
 
 9
 The ALJ also credited Butcher's claim of emphysema, although no real objective medical evidence supported the claim other than her use of prescription drugs.
 
 
 10
 As for non-medical evidence of relevance, the record reveals that claimant left her last regular job as a nurse's aide in June 1986 due to a disagreement with her superior. Prior to that, she had worked as a doughnut maker in a doughnut shop until she was laid off. Butcher's daily routine included keeping house, shopping, reading, and watching television. She visited friends occasionally and drove a car periodically.
 
 
 11
 A vocational expert (VE) testified at the hearing. He assumed claimant: (1) to have a borderline IQ; (2) to be limited to low stress jobs; and (3) to be limited to working in an atmosphere not containing excessive gases, dust, or fumes. The VE concluded that claimant could still perform her past relevant work as a doughnut maker, as well as a variety of medium, light, and sedentary unskilled jobs that exist in the national economy.
 
 II.
 
 12
 On the basis of the record made before the ALJ, there is no doubt that substantial evidence supports the Secretary's decision. Although claiming to be disabled since 1976, claimant worked until mid-1986, and only quit working when she had a disagreement with her superior. Although her home and personal lifestyle is somewhat confined, it is consistent with claimant's economic, educational (eighth grade), and general intelligence level. She really functions quite well under all of these circumstances. Like many disability applicants, she might well have difficulty finding work, but she is certainly not "disabled" from working within the meaning of the Social Security Act.
 
 
 13
 Like the district judge, we find it unnecessary to engage in any detailed discussion of the Listing because the totality of the evidence indicates so clearly that claimant does not have the type of mental impairment contemplated in the Listing.
 
 
 14
 As for the additional medical evidence which claimant asserts should have resulted in a remand at the district court level, we find it little more than cumulative of what is already in the record. Claimant filed a social security form entitled "Claimant's Recent Medical Treatment." On this form, she listed the names of three doctors. In response to that part of the form that asked, "What have these physicians told you about your condition?", claimant replied, "Where my spine is crooked, there is nothing that can be done. Dr. Sundaran said I had emphysema." (App. 123).
 
 
 15
 Since the objective medical evidence in the record already showed that claimant's spine was normal, and since the ALJ, albeit reluctantly, found claimant to have emphysema, there was nothing to be added to the record by this new evidence. Claimant argues that one of the doctors found that her back condition was now "chronic." However, the ALJ did not discount claimant's back problem on the basis of its duration but, rather, because he found it not to be disabling.
 
 
 16
 It is discretionary with a district judge whether to remand upon a claim of new evidence. We find no abuse of discretion here.
 
 
 17
 AFFIRMED.